IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ORVILLE C. MASSEY, JR.,

      Petitioner,

v.                         Case No. 2:08-cv-00936

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On July 22, 2008, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 2). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On October 17, 2008, Respondent filed a Response to the Petition (# 11), a Motion for Summary Judgment, with accompanying exhibits (# 13), and a Memorandum in Support (# 14). On October 23, 2008, in accordance with the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the undersigned entered an Order advising Petitioner of his right to file a response to Respondent's Motion for Summary Judgment, and setting deadlines for a response and reply. (# 15).

On November 25, 2008, Petitioner filed a "Reply (Response) to the Respondent's Answer and Motion for Summary Judgment" (hereinafter "Petitioner's Response") (# 17).  Respondent did not file a reply.  This matter is ripe for determination.

## STATE COURT PROCEEDINGS

On September 12, 2001, Petitioner was indicted by a Fayette County grand jury on 240 counts of Rape, Third Degree Sexual Assault and Second Degree Sexual Assault (State v. Massey, Case No. 01-F-108) (# 13, Ex. 1).

Petitioner was represented in his criminal proceedings by attorney J.B. Rees.  A jury trial began in the Circuit Court of Fayette County, on January 22, 2002.  After the selection of the jury, but before any evidence was presented, the State moved for the dismissal of Counts 1-34 of the indictment, on the basis that the State could not produce sufficient evidence to support that those alleged sexual offenses had occurred in Fayette County, West Virginia.  On January 23, 2002, the jury found Petitioner guilty of all of the remaining counts of the indictment.

Counts 35 through 48 charged Petitioner with rape by a person, over age 16, of a person, not his wife, who was under the age of 10, on dates between June of 1973 and December of 1974.  (# 13, Ex. 1 at pp. 12-17).  Counts 49-106 charged Petitioner with rape by a person, over age 16, of a female person not his wife, and who was of previously chaste character, who was under the age of 16, on

dates between January of 1974 and May of 1976.  (Id. at pp. 17-36).
The indictment noted that the statute pertaining to Counts 35-106,
W. Va. Code § 61-2-15, had been repealed in 1976.

Counts 107-192 charged Petitioner with sexual assault in the
third degree, in violation of W. Va. Code § 61-8B-5, on dates
between June of 1976 and December of 1979.  (Id. at pp. 36-65).
Counts 193-240 charged Petitioner with sexual assault in the second
degree, in violation of W. Va. Code § 61-8B-4, on dates between
January 1980 and December 1981.  (Id. at pp. 65-81).

By order entered March 8, 2002, Petitioner was sentenced by
the trial court to concurrent sentences of 15 to 35 years on Counts
35-48; concurrent sentences of 1 to 5 years on Counts 49-106;
concurrent sentences of 1 to 5 years on Counts 107-192; and
concurrent sentences of 5 to 10 years on Counts 193-240.  The court
further ordered that the "four groups of concurrent sentences
imposed . . . shall be served consecutively."  (# 13, Ex. 3).
Thus, Petitioner was sentenced to serve a total of 22-55 years in
prison.

Apparently, Mr. Rees did not file a timely Petition for Appeal
concerning Petitioner's convictions and sentences in the Supreme
Court of Appeals of West Virginia (hereinafter the "SCAWV").  On
April 25, 2003, however, Petitioner filed a motion in the Circuit
Court of Fayette County, requesting that counsel be appointed to
assist him in filing a petition for a writ of habeas corpus.

3

Petitioner's case was assigned Case No. 03-C-85.   According to Respondent's Memorandum of Law, counsel was appointed and two subsequent petitions were filed, which Respondent states are not relevant to the proceedings herein.   However, on May 10, 2005, after a hearing during which Petitioner chose to have his sentencing order re-entered, in order to restart the time for filing a Petition for Appeal, rather than seek habeas corpus relief, the Circuit Court of Fayette County vacated and re-entered Petitioner's sentencing order.   (# 13, Ex. 6).

On or about June 1, 2005, Petitioner filed a pro se Petition for Appeal in the SCAWV, which was assigned Case No. 051191.   (# 13, Ex. 4 at 1).   The SCAWV refused the Petition for Appeal on June 29, 2005.   (Id.)

However, on or about September 12, 2005, attorneys Kevin Burgess and Christopher Frost, of the law firm of Hamilton, Burgess, Young and Pollard, PLLC, filed a Motion for Leave to File an Amended Petition for Appeal in the same proceeding.   The Motion for Leave was granted on November 3, 2005, and the Amended Petition for Appeal was accepted for review.   (Id. at 2).   On January 11, 2006, the SCAWV refused the Amended Petition for Appeal.   (Id. at 3).[1]   The record before this court does not indicate whether

---

[1]   Respondent's Memorandum of Law in support of his Motion for Summary Judgment does not appear to have addressed the filing of the Amended Petition for Appeal and the refusal thereof.   (# 14 at 2).

Petitioner filed a Petition for a Writ of Certiorari in the Supreme Court of the United States, and an online search revealed no such petition.

On March 9, 2006, Petitioner filed a pro se Petition for a Writ of Habeas Corpus in the Circuit Court of Fayette County (Massey v. McBride, Case No. 06-C-92).  (# 13, Ex. 7).  Attorney James Adkins represented Petitioner in his omnibus proceedings in the Circuit Court.  Following an evidentiary hearing held on April 11, 2007, the Circuit Court of Fayette County denied Petitioner's claims for habeas corpus relief on the merits in an Order entered April 26, 2007.  (Id., Ex. 8).

On August 27, 2008, Petitioner filed a pro se Petition for Appeal in the SCAWV concerning the denial of his Fayette County habeas corpus petition.  (Id., Ex. 9).  The SCAWV refused the Petition for Appeal on June 17, 2008.  (Id.)

Petitioner then filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on June 27, 2008.  (# 2).  In the instant petition, Petitioner raises 27 claims for habeas corpus relief.  They are:

1. Did the circuit court judge, John W. Hatcher, Jr., err when he failed to follow the requirements of West Virginia State Code § 53-4A-7(c) (1994), requiring a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the Petitioner and to state the ground upon which the matter was determined.

2. Did the circuit court judge, John W. Hatcher, Jr., err when he failed to conduct a de novo review of the record in the under case 01-F-108, judgment under attack in the habeas proceedings when Judge Hatcher was not the presiding judge in the under criminal case and therefore having no personal knowledge of the factual predicate of the under case.

3. Did the circuit court judge, John W. Hatcher, Jr., err or neglect his duty when he failed to make the court's findings of fact and conclusions of law as required by West Virginia State Code § 53-4A-7 West Virginia State Court Rules of Habeas Proceedings Rule 9(c), and West Virginia State Court Rules of Civil Procedure 52(a) when Judge Hatcher permitted prosecuting attorney Carl L. Harris to prepare the final judgment in the case.

4. Did the circuit court judge, John W. Hatcher, Jr., err in ruling 27. The Petitioner was sentenced in accordance with the law in effect at the time of the crime was proper, when the Petitioner was sentenced to 15-35 years in prison under the 2001 version of the sexual assault statute for alleged violations of repealed statute, West Virginia Code § 61-2-15, the old rape statute, alleged to have been committed between the years of 1971 and 1976.

5. Did the circuit court judge, John W. Hatcher, Jr., err in his rulings as to each ground raised in the petition for a writ of habeas corpus that each ground was without merit.

6. The Petitioner was convicted after a trial where the State had violated Miranda Rights of the defendant and conducted illegal wire taping [sic; tapping] in order to obtain a tape recording of a telephone conversation between the Petitioner and the alleged victim in the under criminal case.

7. The Petitioner was convicted on an indictment returned thirty years after the first alleged offense and twenty years after the last alleged offense was to have allegedly occurred this creating a prima facie prejudice to the Defendant's ability to offer any reliable or effective defense to the twenty to thirty year old allegations and

6

leaving a trial with unreliable results.

8.  The jury was instructed on the wrong definition of forcible compulsion and the State wholly failed in presenting any evidence of forcible compulsion therefore failing to prove each and every element of West Virginia State Code § 61-8B-4 as well as failing sufficiency-of-the-evidence.

9.  The Petitioner was denied the right to effective assistance of counsel, pre-trial, trial, and post-trial when counsel for the Petitioner failed to investigate the applicable law in place at the time of the alleged offenses, failed to investigate the case, find favorable witnesses, filed motions to quash the indictment that was plagued with fatal flaws of Ex-Post-Facto applications of law and properly prepare a defense or move for judgment of acquittal and perfect a petition for appeal.

10. The Petitioner was convicted of numerous counts of the indictment in violation of Ex-Post-Facto principles in violation of West Virginia Constitution Art. III § 4 and United States Constitution Article I, Section 9.

11. The Petitioner was convicted after a trial where the court instructed the jury on the definition of forcible compulsion in W. Va. Code 61-8b-1, (1)(c) (1986), however, W. Va. Code 61-8b-1, (1)(c) was not part of the definition of forcible compulsion in 1976-1981 and in fact did not become effective until July 1, 1986, well after the incidents alleged in the indictment. This is in violation of Ex-Post-Facto law prohibited by the West Virginia State Constitution Art. III § 4 and U.S. Constitution Article I, § 9.

12. The Petitioner was convicted under present day rules of evidence for alleged crimes to have occurred over thirty years ago. In violation of West Virginia State Constitution Art. III § 4 and U.S. Constitution Article I § 9.

13. The Petitioner was tried and convicted under a repealed statute in violation of West Virginia Constitution Art. III and State Code 2-2-8 as well as U.S. Constitution Article I, § 9.

14.  The Petitioner was convicted after a trial where the State introduced 404(b) evidence against the Defendant when Rule 404(b) was not in existence at the time of the alleged offense and its application worked to the detriment of the Defendant in violation of Ex-Post-Facto application of law an [sic; in] West Virginia State Constitution Art. III § 4 and U.S. Constitution Article I § 9.

15.  The trial court judge, Charles Vickers erred when he failed to limit the purpose for which 404(b), type evidence could be considered for and failed to apply the correct standard for admissibility under the law in place at the time of the alleged offense, this ERROR in violation of the defendant's rights to have only legal evidence used against him at trial in violation of his Constitutional Right Prohibiting the application of Ex-Post-Facto law as provided by the West Virginia State Constitution, Article III, § 4 and U.S. Constitution Article I § 9.

16.  The Petitioner was sentenced to the current penalty under West Virginia State Code § 61-8b-3 (2002), for alleged violations of Repealed Statute § 61-2-15 in violation of Ex-Post-Facto principles prohibited by West Virginia State Constitution Article III § 4 and U.S. Constitution Article I § 9.

17.  The Petitioner was sentenced to the current penalty under W. Va. Code § 61-8b-3 for alleged violations that were to have occurred between (1976) and (1981), the current sentence being, 15 to 35 years and the sentence provided by Statute at the time of the alleged offenses was 10 to 20 years this violating W. Va. Constitution Art. III § 4 and U.S. Constitution Article I § 9 and is an Ex-Post-Facto application of law.

18.  The Petitioner was Sentenced to an unconstitutional sentence under West Virginia Code § 61-8b-4 (1976) to a term of five to ten years in prison.  This is a violation of a liberty interest provided by the State and Federal Constitutions, to be considered for early release prior to discharge of the sentence.

19. The Petitioner was convicted on an Indictment
returned some Thirty years after the alleged
offenses were to have been committed where there
was an improper-joinder of offenses stemming from
the joinder of Repealed Statute W. Va. [Code] § 61-
2-15 the old repealed Statute and the Statute W.
Va. [Code] § 61-8b-3, 4 and 5, the replacement,
these Statutes are elementally different terms and
definitions are different, the old Statute requires
a different type of intent than does the
replacement Statute, the Jury has discretion in
sentencing under the old Statute and does not under
the replacement Statute, this leaving instructions
confusing to the jury and a trial with unreliable
results.

20. The first approximately Thirty Four counts in the
indictment were found to be false at trial in that
it was found that the alleged victim did not even
reside in West Virginia at the time that the
alleged offenses were to have been committed,
clearly this was relevant impeachment evidence of
the alleged truthfulness, credibility, and ability
to recall, this critical defense evidence was
completely **chilled** by the trial Court Judge giving
a false and misleading instruction to the jury that
no evidence was presented on the first thirty four
counts and that he had dismissed them for that
reason, therefore removing an defense benefit and
leaving a trial with unreliable results.

21. The trial Court Judge repeatedly gave an improper
instruction to the jury that "If you further find
by a preponderance of the evidence that **any** element
of the crime occurred in Fayette County, West
Virginia on or about the date alleged in the
indictment you may find the defendant Orville Cecil
Massey, Jr., guilty of the crime. Clearly the law
requires that **all** elements must be proven to have
occurred in the county not just **any** one. This
instruction clearly lessens the burden of proof for
the State and is plainly improper and prejudicial
to the Defendant, making a trial with unreliable
results.

22. The Petitioner has been repeatedly denied his right
to petition to the State Supreme Court of Appeals,
for a review on appeal of his trial and sentence

this denial resulting from ineffective assistance of counsel and inaction on the part of the Fayette County Circuit Court, after repeated requests for assistance by the Petitioner, this being supported by a Closing Order entered by the Office of Disciplinary Counsel, finding that J.B. Reese [sic; Rees], trail [sic; trial] and appeal attorney for the Petitioner had violated the Petitioner[']s Constitutional Right to Petition for Appeal and violations of professional ethics.

23. The Petitioner is denied of a mandatory review of his Petition for Appeal in that the West Virginia State Supreme Court of Appeals has consistently held that one convicted of a criminal offence in West Virginia does not have a constitutional right to a mandatory review of an Appeal Petition only the right to Petition for Appeal this determination being in direct conflict with the Double Jeopardy Clause of both State and Federal constitutions which require that sufficiency-of-evidence be reviewed and a determination made to whether jeopardy has ended or is continuing.

24. The Petitioner has now for more than three years been diligent in his efforts to perfect an appeal petition, as a result of repeated failure on the part of appointed counsel J.B. Reese [sic; Rees] to perfect and submit to appeal petition and repeated failures on the part of the Fayette County Circuit Court Judges to take steps to compel Counsels' performance even after repeated request by this Petitioner. A petition for Writ of Habeas Corpus was filed requesting the remedy of discharge as provided by Rhodes v. Leverette, there after the Court attempted to barter with the Petitioner to one Constitutional right for another, therefore corrupting both rights. This Petitioner has presented a Prima Facie case of extreme dereliction on the part of court appointed counsel J.B. Reese [sic; Rees] and the Court in providing for a timely Appeal Petition being filed and this Petitioner believes the only remedy available is unconstitutional release.

25. The Petitioner was denied his Constitutional Right to Habeas Corpus, when the trial court Judge, Charles M. Vickers did not provide and [sic; an]

opportunity for the Petitioner to present his case in an Omnibus hearing with the effective assistance of counsel, or with notice as to subject matter of a Hybrid Style hearing of some sort, wherein the Court determined that the Petitioner's ground stating he was denied his right to appeal has merit, this being decided Ex Parta [sic; ex parte], in chambers by the Judge in collaboration with Court Appointed Counsel (presumably). This Petitioner was not given any opportunity to present his Habeas Corpus petition in an Omnibus hearing.

26.  The Petitioner has had ineffective assistance of Counsel on Appeal, as Appointed Counsel Kevin Burgess and Christopher Frost, has failed to assist this Petitioner in Perfecting an Appeal Petition, and the Court has failed to enter the Order from which this Petitioner was seeking Appeal, this one again being a Prima Facie case of extreme dereliction on the part of appointed Counsel and the State, in failing to prepare the Order as directed, failure on the part of Counsel to represent there [sic; their] Client and on the part of the court for failing to take steps to ensure timely filing. This Petitioner has had to perfect his Direct Appeal without the benefit of Appointed Counsel, the appeal period about to expire, only four days left and the Petitioner being diligent in his efforts to Appeal his conviction has advanced his Direct Appeal Petition out of necessity and does not wave [sic; waive] any Constitutional Rights to Appeal or Assistance of Counsel of which has not had to date.

27.  The Petitioner was Denied Effective Assistance of Counsel, Pretrial, During Trial and Post Trial by his Court Appointed Counsel J.B. Reese [sic; Rees] who failed to investigate this case, attempt to find favorable witnesses[,] put on any defense after the State's case in chief, or to allow the defendant to testify in his own behalf. Counsel[']s performance being far below objective standards and beyond the scope of what is reasonably required by trial counsel, that no other reasonably suited Attorney would have acted in the same manner. This violating the West Virginia State Constitution Article 3 and 14, as well as U.S. Constitution[']s 6th and 14th Amendments.

11

(# 2).

## **STANDARD OF REVIEW**

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the

12

correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. See, *e.g.*, Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## FACTUAL BACKGROUND

At Petitioner's trial, the State presented the testimony of the alleged victim, B.G., who testified that Petitioner began sexually abusing her when she was about six years old, and the Petitioner was about 26. They were living in Georgia at the time. The victim stated that, during this time period, Petitioner

penetrated her for the first time.  (# 13, Ex. 10 at 64-65).  The
State was permitted to question the victim about the abuse that
took place in Georgia under Rule 404(b) of the West Virginia Rules
of Evidence, for the purpose of establishing a common scheme,
pattern or plan, and to show that the Petitioner had a lustful
disposition toward the victim.  The jury was given a limiting
instruction concerning the use of this evidence.  The limiting
instruction stated:

> All right. Ladies and gentlemen of the jury, you have
> heard testimony concerning alleged conduct or other acts
> of the defendant which are not charged in this indictment
> in the testimony of this witness.  You are instructed
> that this testimony is not admitted as proof of the
> defendant's current charges.  The testimony is admitted
> for a limited purpose only and it may be considered by
> you only in deciding whether a given issue or element
> relevant to the present charge has been proved.  In this
> instance, the testimony of the additional sexual
> misconduct of the defendant may be considered only as it
> relates to the issues of the State establishing a common
> theme, scheme or plan or pattern of conduct on the part
> of the defendant or of the defendant's lustful
> disposition toward the victim.  Accordingly, this
> testimony may be considered by you only for the limited
> purpose just identified.  You may not use this testimony
> in consideration of whether the State has proved the
> crimes charged in the indictment.

(Id. at 66-67).  The trial judge repeated this limiting instruction
in its charge to the jury following the close of the evidence.  (#
13, Ex. 14 at 9-10).

The victim moved to Mahan, Fayette County, West Virginia, with
the Petitioner and her mother and brothers in the summer of 1973.
At that time, she was seven years old.  (# 13, Ex. 10 at 67).  The

victim testified that Petitioner continued to sexually assault her approximately three to five times a week from the time they moved back to West Virginia, until 1982, when she turned 18 years old and moved out of the house.  (Id. at 68-69, 71-73).  The victim also testified that there was a brief period of time in the fall of 1980, when she went to stay with her mother, who had divorced Petitioner and had moved out of the house.  Several times, she stated that she lived with her mother for approximately a month and a half.  (# 13, Ex. 10 at 78, 83-84, 93).  At another point in her testimony, the victim stated that the longest gap between incidents of abuse was about three weeks.  (Id. at 97).

The victim further testified that Petitioner used force to accomplish his sex acts, and she tried to resist.  (Id. at 70, 72, 98).  She further stated that Petitioner told her that her mother would go to jail if anyone found out about it, and he threatened to kill her family and put them in a mine shaft.  (Id. at 70-71, 99-100; 106).  The victim stated that she never consented to the sexual activity.  (Id. at 62, 65, 72, 98).

The victim further testified that, shortly after she had moved out of the house when she turned 18, she approached a police officer in the town of Smithers, West Virginia, where she had moved, and told him about what had happened to her.  The police officer mistakenly told the victim that it was too late to pursue a prosecution because the statute of limitations had expired.

15

Consequently, she took no further action at that time.  (Id. at 73-74).

However, in October of 2000, the victim attended a seminar at which Fayette County Prosecuting Attorney Paul M. Blake spoke about sex offender registration.  The victim approached Mr. Blake after the presentation, and told him about her abuse.  At that time, Mr. Blake informed the victim that there is no statute of limitations in a case such as this, and thereafter, the victim assisted the police and the prosecutor with an investigation of Petitioner.  (Id. at 74-75).

The victim agreed to engage in a tape-recorded telephone conversation with Petitioner, in an attempt to get him to talk about his sexual abuse of the victim.  The victim gave her permission to have the conversation recorded.  (Id. at 75-76).  During their telephone conversation, Petitioner said that the abuse was "just something that happened," that he thought that the victim was enjoying it, and that he was "sorry it ever happened."  (# 13, Ex. 12 at 7-10).

During her testimony, the victim was asked about whether anyone else had witnessed any of the sexual acts that Petitioner had engaged in with her.  She stated that her mother and her younger brother had witnessed such activity.  She stated that her younger brother walked into the room one night as Petitioner was raping her.  (# 13, Ex. 10 at 76-78).

16

In accordance with the allegations contained in the indictment, the victim confirmed that Petitioner had engaged in sexual intercourse with her on at least two occasions a month from June 1973 to December of 1981, with the exception of the one and a half month period where she had moved in with her mother in the fall of 1980. (<u>Id.</u> at 82-84).

On cross-examination, Petitioner's counsel peppered the victim with questions about why she stayed in the house with Petitioner after her mother had left him. The victim stated that she was afraid to leave her younger brother, who was in Petitioner's legal custody, and also because she wanted to graduate from Oak Hill High School. (<u>Id.</u> at 92-94). The victim also testified that, during the brief time period that she stayed with her mother, their living conditions were intolerable, with no indoor plumbing; whereas, Petitioner was able to provide for her financially. (<u>Id.</u> at 94, 97). The victim further testified that Petitioner repeatedly promised that he would not touch her again, but then he would do it anyway. (<u>Id.</u> at 90, 92-93, 96-97).

The State also presented the testimony of the victim's mother, Nancy Massey. Ms. Massey confirmed that she witnessed the sexual abuse of her daughter by Petitioner on one occasion in 1973. (<u>Id.</u> at 103-106). Ms. Massey testified that she awakened to find that her husband was not in bed, so she looked into the room next door and saw Petitioner engaging in oral sex and possibly penetration of

17

her daughter's vagina with his penis.  (Id. at 104).  Ms. Massey stated that she grabbed a shot gun and almost shot at Petitioner, but decided against it.  Petitioner then came back into their bedroom and stated "You didn't see nothing, did you?" and that he threatened to kill her family and put them in a hole at a mine site, if she told anyone.  (Id. at 105-106).

Ms. Massey stated that she divorced Petitioner in 1980, and that she had moved out of the house before the divorce.  (Id. at 106-107).  Ms. Massey denied that she ever encouraged Petitioner to engage in sexual activities with her daughter.  (Id. at 107).  She further testified that she did not report the abuse to authorities because Petitioner had threatened her and she was afraid.  (Id. at 107-108).

On cross-examination, Ms. Massey was asked when she first suspected that Petitioner was abusing her daughter.  She stated that she heard rumors about it when they lived in Georgia, but she did not see anything going on there.  (Id. at 110-111).

The State also presented the testimony of the victim's younger brother, who confirmed that he, too, had witnessed the sexual abuse of his sister by Petitioner when he was about six or seven years old, and his sister was about 11 or 12.  (Id. at 118-120).  He stated that he did not tell anyone about it because he was scared. (Id. at 121).

18

The State also presented the testimony of one of the victim's cousins, and the investigating police officer, Eric Wriston, with the Fayette County Sheriff's Office.  Detective Wriston confirmed that he had gotten the victim's consent to record the telephone conversation with Petitioner, and that he was the officer who took Petitioner's statements on November 16, 2000 and November 21, 2000, prior to his arrest.  (Id. at 135, 140, 142).

Prior to the trial, Petitioner's counsel moved to suppress the audiotapes of both the telephone conversation and Petitioner's statements to Detective Wriston.  After having an evidentiary hearing, the trial judge denied the motions to suppress.  (# 13, Ex. 13).  The audiotapes of the telephone conversation between Petitioner and the victim and the Petitioner's statements were played for the jury.  (# 13, Ex. 10 at 139, 149).

During the suppression hearing, Detective Wriston testified about the statements he took from Petitioner.  Detective Wriston stated:

> A.   He advised that he had had sexual intercourse with [B.G.] on -- I believe it was one occasion and that there had been some oral sex that had taken place between the two, given and/or receiving.  Both. Even to the degree to where he stated in his statement that the mother of [B.G.], who was his wife at the time, had -- was an acting participant in these acts.
>
> * * *
>
> A.   He was questioned in reference to the sexual intercourse.  I asked him if -- what led him to believe that Mrs. Massey, at the time, which would

19

> have been his wife, -- did she ask him to have sex
> with [B.G.] And in his first statement, prior to
> recording the actual taped statement . . . . When I
> asked him if Ms. Massey had asked him directly more
> or less to have sex with [B.G.] And prior to
> recording the statement, his answer was no, but
> that's how he understood it.  And then the taped
> statement began, at that point, he said, "Well,
> yeah.  She brought her in there to the bed and
> wanted to have sex with all three of us."

(# 13, Ex. 13 at 29-30).  This federal court is not in possession
of a transcribed version of the taped statements.

After the State rested, Petitioner chose not to testify on his
own behalf and his counsel presented no other witnesses or
evidence.  (Id. at 165).

### ANALYSIS

As previously listed, Petitioner has raised 27 grounds for
relief in his federal habeas corpus petition.  A number of the
grounds for relief involve similar issues.  Accordingly, where
appropriate, the undersigned shall group the grounds for relief and
address them collectively.  The undersigned further notes that,
rather than state his claims anew in his federal petition,
Petitioner has merely attached the Petition for Appeal from the
denial of his omnibus habeas corpus petition.

**A.   Petitioner's claims concerning adequacy of state court
habeas corpus proceedings.**

In Grounds 1 through 5, Petitioner challenges the adequacy of
the state habeas proceedings.  He claims that the state habeas
court failed to conduct a de novo review, failed to make specific

20

findings of fact and conclusions of law, erred in allowing the prosecutor to prepare the final order, and erred in making its rulings on the underlying claims.  (# 2 at 30-31).

Respondent's Memorandum of Law groups these claims for relief together and addresses them as follows:

> Post-conviction proceedings have no bearing on the proceedings that result in a deprivation of liberty and therefore have no bearing on whether a defendant received due process before being incarcerated.  There is no constitutional right requiring the States to provide any avenue for State post-conviction collateral relief, *e.g.*, Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Therefore, any claim of error in post conviction proceedings fails to raise a federal claim and cannot form the basis for relief in federal habeas corpus. *E.g.*, Bryant v. Maryland, 848 [F.2d] 492, 493 (4th Cir. 1988).

(# 14 at 15).

In Petitioner's Response, Petitioner reasserts the arguments made in his federal petition for each ground for relief.  (# 17). Concerning Respondent's Motion for Summary Judgment as to Grounds 1 through 5 of Petitioner's federal petition, Petitioner adds:

> Although in habeas corpus proceedings instituted by state prisoner in a Federal District Court the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact he may not defer to its finding of law it being the district judge's duty to apply the applicable federal law to the state court fact findings independently; the state conclusions of law may not be given binding weight on habeas corpus.

(Id. at 10).

As noted by Respondent, a state prisoner has no federal constitutional right to post-conviction proceedings in state court.

Pennsylvania v. Finley, 481 U.S. 551, 557 (1987); Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001). Therefore, alleged infirmities in state post-conviction proceedings cannot serve as the basis for federal habeas corpus relief. See Bryant, *supra*, 848 F.2d at 493; see also Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008). (Id. at 15).

The undersigned proposes that the presiding District Judge **FIND** that the claims for relief in Grounds 1 through 5 of Petitioner's section 2254 petition are challenges to the state court post-conviction proceedings and, thus, are not cognizable in federal habeas corpus. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on Grounds 1 through 5 of Petitioner's section 2254 petition.

### B. Petitioner's <u>Miranda</u> and illegal wiretapping claims.

In Ground 6 of his section 2254 petition, Petitioner contends that the State violated his constitutional rights when it obtained a tape recording of a telephone conversation between Petitioner and the alleged victim, without his knowledge that it was being recorded, and without providing him with Miranda warnings. (# 2 at 45-50). Specifically, Petitioner states:

> The Petitioner was subject to unlawful wire taping [sic; tapping] prior to trial. This issue was presented to the Trial Court Judge, Charles Vicker[s], under a Motion to Suppress Telephone Conversation. Judge Vickers denied this Motion and allowed the taped conversation into evidence.

[B.G.] was the alleged victim in the under criminal case. On November 1, 2000, [B.G.] at the instigation or direction of Fayette County Deputy Wriston, contacted the defendant by telephone and recorded a telephone conversation between the defendant and herself.

[B.G.] was acting under the direction and authority of the Fayette County Sheriff's Department and was an agent of their department in this encounter. Although [B.G.] is not a paid employee of the Sheriff's Department, she was acting as an agent, and as such, her actions are subject to the requirements of both statutory and constitutional law. It would have been improper for law enforcement authority to contact Mr. Massey, who was a suspect in these alleged sexual offenses, without first informing him of his numerous constitutional rights. The State has attempted to usurp the constitutional safeguards afforded all citizens by ignoring the laws of both the State of West Virginia and the Constitution of the [U]nited States. The police should not be allowed to do indirectly what they can not do directly.

(Id. at 45-46). Petitioner adds:

This Illegal Wire Tap[p]ing was a violation of his right to privacy and a Violation of Search and Seizure, as well as Maranda [sic; Miranda] Violation and rights against Self Incrimination as provided for by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 5, 10, and 14 of Article 3 of the West Virginia Constitution and Rule 5(a) of the West Virginia Rules of Criminal Procedure and West Virginia Code § 62-1-5.

(Id. at 48). Petitioner contends that the admission of this tape recording prejudiced him "with illegal evidence tainting the Jury and making a trial with Unreliable Results." (Id. at 49).

In Ground 6, Petitioner also asserts that the admission of audiotapes of two interviews that he gave to Detective Wriston prior to his arrest was improper because, again, he was not given his Miranda warnings and made the statements without the benefit of

23

counsel.  Petitioner states:

> The Petitioner had his Miranda Rights Violated when
> Police of the Fayette County Police Department conducted
> an interview with the Petitioner without Counsel present
> or properly advising the Petitioner of his Miranda
> Rights.
>
> This Violation was brought to the Trial Court[']s
> attention by a Motion to suppress the statement.  The
> Trial Court, in its deciding of the Motion applied the
> law of the present day (2002) in making its ruling.  This
> of course violated Ex-Post-Facto principals [sic;
> principles].
>
> Miranda Requirements in the (1970's) were strictly
> enforced and nearly any deviation warranted reversal.
> Through the (1980's) and (90's) the standards of Miranda
> have been lessened, but the Petitioner is entitled to the
> full protection of a Miranda Violation as it was in place
> during the time of the alleged offenses.
>
> The trial Court also mis-applied even today's law,
> failing to recognize that even when Miranda is advised in
> the first instance and an accused later makes an
> incriminating statement Miranda is one [sic; once] again
> triggered and must be advised[.] The record is clear in
> the Petitioner's case that Miranda was not advised.

(Id. at 49-50).

Concerning both the tape recording of Petitioner's telephone

conversation with the alleged victim, and Petitioner's statements

to Detective Wriston, Respondent first argues that Miranda warnings

have no application in this case.  His Memorandum of Law states:

> The Supreme Court held in Miranda v. Arizona, 384 U.S.
> 436, 444 (1966):
>
> [T]he prosecution may not use statements, whether
> exculpatory or inculpatory, stemming from custodial
> interrogation of the defendant unless it demonstrates the
> use of procedural safeguards effective to secure the
> privilege against self-incrimination.  By custodial
> interrogation, we mean questioning initiated by law

enforcement officers *after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.* (Emphasis added.)

Petitioner was not in custody at the time the tapes were made. Therefore, <u>Miranda</u> is not implicated under the present set of facts and cannot form the basis for habeas corpus relief on this ground.

(# 14 at 16-17).

Respondent further asserts that, to the extent that Petitioner has contended that the tape recording of his telephone conversation with the alleged victim was an illegal search and seizure, that claim is not cognizable in federal habeas corpus because Petitioner already had an opportunity for full and fair litigation of that issue in his underlying criminal proceeding. Respondent states:

This claim also fails as a challenge to the admissibility of the tape under the Fourth Amendment. The challenged evidence was the subject of a suppression hearing and deemed admissible by the trial court. (Resp't Ex. 13 at 10-15.) Therefore, this claim is not reviewable in federal habeas corpus.

In <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976), the Supreme Court held that:

[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

(# 14 at 17).

Finally, Respondent contends that Petitioner's claim that the taping of his telephone conversation with the alleged victim was made in violation of West Virginia's Wire Tapping and Electronic

25

Surveillance Act, W. Va. Code § 61-1D-1 et seq., and that the tape was improperly admitted into evidence, is strictly a matter of the application of state law, and that such claims are not cognizable in federal habeas corpus.  Respondent cites the Fourth Circuit's recent opinion in Barbe v. McBride, 521 F.3d 443 (4th Cir. 2008), which addressed such claims as follows:

> Importantly, in considering federal habeas corpus issues involving state evidentiary rulings, "we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2002).  "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993)(internal quotation marks omitted); see also Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed.2d 385 (1991) (explaining that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").  In light of these limitations on the scope of our inquiry, we confine our consideration of the Confrontation Issue to the question of whether the Rape Shield Ruling contravened Barbe's Sixth Amendment confrontation right, without examining such issues as whether the state circuit court properly interpreted the West Virginia rape shield law itself.

> Barbe, [521 F.3d] at 452-53.

(# 14, at 17-18).

Petitioner's Response asserts that the alleged victim's consent to record the telephone conversation is irrelevant because she was acting as an agent for the State.  (# 17 at 11).  Citing to the Supreme Court's decision in Michigan v. Jackson, 475 U.S. 625, 632 (1986), Petitioner further contends that "police-initiated

questioning in the absence of counsel violates the Sixth Amendment of the United States Constitution" and that "the police initiated this illegal wiretap in order to compel the Petitioner's statement." (Id. at 12-14). Finally, Petitioner contends that Respondent's reliance upon Stone v. Powell, 428 U.S. 465 (1976) is misplaced because it is inapplicable to the Sixth and First Amendment claims at issue in this case. (Id.)

Taking these issues one at a time, the trial court held evidentiary hearings and determined that the tape recording from the telephone conversation between Petitioner and the alleged victim, as well as both of Petitioner's statements to the police were admissible under West Virginia law. It is not the province of this federal court to revisit a state court's ruling on a state law issue. See Wainwright v. Goode, 464 U.S. 78, 84 (1983); Garner v. Louisiana, 368 U.S. 157, 169 (1961)("the views of the state's highest court with respect to state law are binding on the federal courts."); Faircloth v. Finesod, 938 F.2d 513, 517 n.9 (4th Cir. 1991)("This court is bound by the state court's interpretation [of a state statute], and must assume that the statute says what the state court says it says.")

This concept was reiterated in a ruling on a section 2254 petition filed in the Northern District of West Virginia: "The determination of the intent of the Legislature of the State of West Virginia is solely within the province of the West Virginia Supreme

27

Court of Appeals and its subordinate courts, not with the federal courts. It is not the role of the federal judiciary to contradict the state courts on their law." Jones v. Painter, 140 F. Supp.2d 677, 679 (N.D. W. Va. 2001)(Broadwater, J.). The Jones court further stated: "Claims that a state court misapplied its own statutes are not proper for litigation on federal habeas corpus." Id.

Furthermore, Petitioner had an opportunity for full and fair litigation of his claim that the taping of the telephone conversation between himself and the alleged victim violated his privacy rights and his rights against illegal search and seizure. Thus, Stone v. Powell prohibits this federal court from revisiting that claim.

To the extent that Petitioner is asserting that he was questioned without counsel present, Petitioner has presented no evidence to support a finding that he requested counsel be present during his questioning, and, because he was not in custody at the time he made the statements (this issue is discussed further below), Detective Wriston had no obligation to advise Petitioner of his right to have counsel present for the questioning. Thus, there is no evidence to demonstrate a Sixth Amendment violation in this instance. Moreover, nowhere in his federal petition does Petitioner make any First Amendment claim.

Finally, there was no Miranda violation in this case. As

found by the state courts, Petitioner was not "in custody" at the time that he made any of his statements.  In Rhode Island v. Innis, 446 U.S. 291, 300 (1980), the Supreme Court held that "the special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."  Id.  The question of whether a defendant was "in custody" is a mixed question of law and fact, which warrants independent review without application of the presumption of correctness under 28 U.S.C. § 2254(d).  "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995).  The first inquiry is a factual one, subject to the presumption of correctness.  The second question however, must be independently answered.

"[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983).  The Beheler Court further noted:

> But we have explicitly recognized that Miranda warnings
> are not required "simply because the questioning takes
> place in a station house, or because the questioned
> person is one whom the police suspect" . . . . Moreover,
> the length of time that elapsed between the commission of
> the crime and the police interview has no relevance to

the inquiry.

Id.

At the suppression hearing, the trial court made the following findings when denying the motion to suppress Petitioner's statements to the police:

> Based on the evidence before me, it is the opinion of the Court, having heard the evidence, that the officer did invite Mr. Massey over to talk with him. He came over voluntarily. He even brought a young child with him to show the voluntariness of it. Had he thought he was going to stay, I doubt that he would have brought a young child, six years of age, with him with no other adult to attend him.
>
> And he did talk to Officer Wriston freely and voluntarily. Officer Wriston did advise him in a roundabout way of his rights. The Court doesn't feel that was necessary. The Court doesn't feel it was even a custodial situation.
>
> &ast; &ast; &ast;
>
> But be that as it may, I don't think it was required in this instance. The visit on the first statement over in Beckley, here again, the Court's of the opinion that it was freely and voluntarily given. He was invited into Mr. Massey's home. The officer talked to him over there. He was outside his jurisdiction. He showed his identification, told him he was an officer from over in Fayette County. Mr. Massey did freely and voluntarily talk to him on that occasion.
>
> The Court is of the opinion that the statements made by Mr. Massey on both November the 16th, 2000, November the 21st or 22nd, 2000, whatever the date may have been here in Fayetteville, were freely and voluntarily given and are admissible.

(# 13, Ex. 13 at 58-59).

Under the totality of the circumstances presented, the undersigned proposes that the presiding District Judge **FIND** that

30

Petitioner was not "in custody" at the time he was interrogated by Detective Wriston.  Based upon the undersigned's proposed finding that Petitioner was not in custody at the time of his interrogation, the undersigned further proposes that the presiding District Judge **FIND** that the failure to inform Petitioner of his Miranda rights before interrogating him was not a violation of his Fifth Amendment rights.  Therefore, the state courts' denial of habeas corpus relief on these claims was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on the claims in Ground 6 of Petitioner's federal petition.

### C.   Petitioner's claim concerning pre-indictment delay.

Although he has placed it under a heading concerning alleged ex post facto violations, in Ground 7 of his federal petition, Petitioner makes a general assertion that, the delay of 20-30 years from the time of the alleged incidents before bringing an indictment unduly prejudiced his "ability to offer a reliable or effective defense" and left the trial with "unreliable results." (# 2 at 50).  Petitioner specifically states:

> The Petitioner was Indicted some thirty years after the first alleged offence was to have occurred.  The date range of offenses was from (1972) through (1981).  The alleged victim failed to report any of the alleged

31

offenses for three decades.  The Petitioner was Indicted in the year 2001, for offenses about thirty years old.

The Defendant was never put on Notice that he may someday have to defend allegations of offenses that were alleged to have been committed in the (1970's). Therefore this Petitioner could not foresee the need to preserve evidence that would have been helpful to him at trial.

This is a Prima Facie case of prejudice and this Petitioner should not have to be held to list the litany of possible prejudices as it should be presumed as prejudice for the thirty year delay.

In addition to the Petitioner's ability to defend himself against the untrue charges it is further complicated by repeated changes of West Virginia Code and State Court Rules.  These codes and rules have changed over and over throughout this thirty year period, creating a maize [sic; maze] of Ex Post Facto problems. This disadvantaging not only the Petitioner but the Court and the State and Defense Counsel.  None of which have a time machine, by which they can travel back in time and operate in a proficient manner under the law that applied to the time of the alleged offenses.

While there is no statute of limitations as to the particular offenses alleged in the Indictment, there should however be some common sense to whether or not to subject and [sic; an] individual accused, the Courts, and the State of West Virginia, to prosecutions where all parties are disadvantaged by the passage of time in reporting.  Prosecutors are bound to use discretion in the cases they seek to prosecute, and this discretion should be balanced with the passage of time.

(Id. at 50-51).

Respondent's Memorandum of Law contends:

The Due Process Clause of the Fifth Amendment warrants dismissal of an indictment for pre-indictment delay only when the defendant shows (1) substantial prejudice to his right to a fair trial and (2) that the delay was an intentional device by the government to gain a tactical advantage. United States v. Marion, 404 U.S. 307, 325 (1966).  "The Due Process Clause has never been

interpreted so as to impose a presumption of prejudice in the event of lengthy pre-indictment delay . . . ." <u>Jones v. Angelone</u>, 94 F.3d 900, 906 (4th Cir. 1996).

(# 14 at 35).  Respondent further contends that, because physical evidence has never been a required element of proof for a rape conviction, Petitioner cannot use the inability to physically examine the victim as a ground of undue prejudice.  (<u>Id.</u> at 36). Finally, Respondent states:

> Even were there demonstrable prejudice from the delay, petitioner cannot meet the burden of showing that the State purposefully delayed the indictment to gain a tactical advantage.  The evidence introduced at the trial in this matter was precisely what was available to convict at the time of the crimes.  The State would not have gained a tactical advantage by waiting 30 years to prosecute Petitioner. If anything, Petitioner benefitted greatly from the delay in the indictment by escaping prosecution and roaming the streets for the thirty years he would have been in prison if he had been tried and convicted under the 1976 Rape statute and sentenced to life imprisonment as the evidence suggests he would have been.

(<u>Id.</u>)

Petitioner's Response suggests that "the State now stands in the place of the prosecutrix/complainant, and must also stand accountable for the prejudicial delay cause[d] by the prosecutrix/complainant . . . ."  (# 17 at 23).

At the pre-trial suppression hearing, Petitioner's counsel, J.B. Rees, addressed the issue of pre-indictment delay with the trial court.  Mr. Rees discussed two different standards under West Virginia law, and argued that, under <u>State ex rel. Leonard v. Hey</u>, 269 S.E.2d 394 (W. Va. 1980), the State was put on notice of the

charges when the alleged victim reported the crimes to the Smithers police officer in 1982.  (# 13, Ex. 13 at 5-7).  Mr. Rees, however, further acknowledged that, if the State was not on notice at that time, the case would fall under the standard set forth in Hundley v. Ashworth, 382 S.E.2d 573 (W. Va. 1989), which requires the defendant to show both a prejudicial effect from the delay, and that the delay was intentional in order to allow the prosecution to gain a tactical advantage.  Mr. Rees stated that he could not claim that the State had delayed Petitioner's prosecution in order to gain an advantage and that he would lose on that standard.  (Id. at 7).

The trial court made the following findings on this issue:

> The Court will take the position that the Hundley standard does apply.  The Court also finds that just when the victim contacted the Smithers police officer, that he made a determination that the -- that there was a statute of limitations, but that was insufficient.

> The prosecutor's office was not advised.  They represent the State of West Virginia.  They're the chief law enforcement officers of the county to make that decision for that jurisdiction and therefore, the motion is denied.

(Id. at 9).

The State habeas court made a summary finding that "there is no error regarding the pre indictment delay."  (# 13, Ex. 8 at 4 ¶ 21).

The Hundley standard used by the trial court in Petitioner's hearing mirrors the federal standard concerning dismissal for pre-

indictment delay.  The Due Process Clause may provide a basis for dismissing an indictment if the defense can show both that prosecutorial delay in bringing the charges was done in order to gain a tactical advantage over the defendant and that such delay prejudiced the defendant's right to a fair trial.  See United States v. Marion, 404 U.S. 307, 325 (1971); United States v. Lovasco, 431 U.S. 783, 788-790 (1971).  "[P]rejudice is . . . a necessary . . . element of a due process claim." Lovasco, 431 U.S. at 790.

As noted by Respondent, Petitioner's only argument concerning prejudice is that, by the time the victim reported the alleged sexual abuse, there was no way to dispute the claims with physical evidence.  As Respondent further noted, however, convictions for sexual crimes do not require physical evidence.  Thus, even 30 years ago, the State may not have been able to substantiate the alleged victim's claims with physical evidence, and still could have obtained a conviction based solely on the victim's testimony.  Furthermore, as admitted by his trial counsel, Petitioner cannot demonstrate that any pre-indictment delay was intentionally undertaken by the prosecution in order to gain a tactical advantage.

Accordingly, the state courts' denial of habeas corpus relief on this basis was neither contrary to, nor an unreasonable application of, clearly-established federal law, and was not based

upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this claim.

     **D.   Petitioner's claim of improper joinder.**

     In Ground 19 of his federal petition, Petitioner claims that the pre-indictment delay of 30 years resulted in the improper joinder of offenses that were governed by the old rape statute, W. Va. Code § 61-2-15, which has been repealed, with offenses that were governed by the replacement statutes in W. Va. Code § 61-8B-3, 4, and 5.  Petitioner argues that "[t]hese Statutes are elementally different, terms and definitions are different, and the old Statute requires a different type of intent than does the replacement Statute, the Jury has discretion in the sentencing under the old Statute and does not under the replacement Statute, this leaving instructions confusing to the Jury, and a Trial with unreliable results."  (# 2 at 71-72).

     Respondent's Memorandum of Law contends that joinder of all of the offenses in this case was proper, and that Petitioner has not stated a cognizable constitutional claim.  Respondent states:

> In <u>United States v. Lane</u>, 474 U.S. 438 (1986), the Supreme Court held that "[i]mproper joinder does not, in itself, violate the Constitution. <u>Id.</u> at 446 n.8.  The Court stated that "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

36

Amendment right to a fair trial." <u>Id.</u> The Court went on
to hold that improper joinder is subject to a harmless
error analysis. <u>Id.</u> citing <u>Kotteakos v. United States</u>,
328 U.S. 750 (1946).

* * *

The Supreme Court has historically promoted joinder for
the sake of judicial economy even under the caveat that
joinder of charges in one trial can create an inherent
danger that a jury will consider evidence of multiple
charges cumulatively. <u>Zafiro v. United States</u>, 506 U.S.
534, 539 (1993)("[Joint trials] promote efficiency and
'serve the interests of justice by avoiding the scandal
and inequity of inconsistent verdicts.' quoting
<u>Richardson v. Marsh</u>, 481 U.S. 200, 209 (1987)); <u>Spencer
v. State of Texas</u>, 385 U.S. 554, 562 (1967)(jury is
expected to follow limiting instructions so that joinder
can be a viable convenience for the government).

(# 14 at 31).   Respondent argues that the crimes with which

Petitioner was charged were of the same or similar nature and were

all committed against the same victim.  (<u>Id.</u> at 32).   Furthermore,

[t]he variations between the elements of each offense
charged in the indictment were similar but
distinguishable and the distinctions between them were
carefully addressed in the instructions.  The court also
specifically instructed the jury that they were to
consider each charge separately: "The burden of proof on
the State of West Virginia is to prove every material
allegation in the indictment and every element of the
crime charged beyond a reasonable doubt." (Resp't Ex. 14
at 6-7.)  The presumption is that the jury followed the
instruction.  <u>Spencer v. State of Texas</u>, 385 U.S. 554,
562 (1967).   Petitioner has not rebutted this
presumption.

(<u>Id.</u>)

Petitioner's Response reiterates his prior arguments and adds,

"The Respondent continues to fail to see that conflicting term[s],

definition[s],   and   prior   laws   governing   like   or   same

transaction[s], or having conflicting elements govern like or same transactions, cannot be triad [sic; tried] together without consent of the accused."  (# 17 at 21).

The state habeas court found that "[t]here is no legal merit to the claim of improper joinder."  (# 13, Ex. 8 at 4 ¶ 28).

Rule 8(a)(2) of the West Virginia Rules of Criminal Procedure requires that all offenses shall be prosecuted by separate counts in a single prosecution if they constitute "parts of a common scheme or plan." W. Va. R. Crim. P. 8(a).  Rule 14(a) of the same rules provides that "if it appears that a Defendant or the State is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires." W. Va. R. Crim. P. 14(a).  The decision to grant or deny a motion to sever is in the sound discretion of the trial court. State v. Hatfield, 181 W. Va. 106, 380 S.E.2d 670 (1988) and State v. Ludwick, 197 W. Va. 70, 475 S.E.2d 70 (1996).

A defendant is not entitled to relief from prejudicial joinder when evidence of each of the crimes charged would be admissible in a separate trial.  State v. Milburn, 204 W. Va. 203, 511 S.E.2d 828 (1998).  Prejudice is not present under the "other crimes" rule if evidence of each of the crimes charged would be admissible in a separate trial for the other.  State v. Penwell, 199 W. Va. 111, 483 S.E.2d 240 (1996).

38

Petitioner's basis for this claim is that the joinder of counts concerning sexual offenses that were governed by different versions of the applicable statutes was confusing to the jury. However, based upon an exhaustive review of the trial transcripts, it is clear that the jury was properly instructed on the elements of each offense under the statute in place at the time of each crime, and that the differentiation in the elements and terms in each statute was properly explained to the jury prior to its deliberations.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the joinder of all of Petitioner's charges for trial did not have a substantial and injurious effect or influence in determining the jury's verdict and, thus, Petitioner was not denied a fair trial.  Accordingly, the state courts' denial of habeas corpus relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this claim.

### E.   **Petitioner's ex post facto claims.**

In Grounds 8 through 18 of his federal petition, Petitioner asserts claims for habeas corpus relief based upon alleged

violations of the Ex Post Facto Clause of the United States Constitution.  U.S. Const. Art. I, § 9, cl. 3.  Respondent notes that the Ex Post Facto Clause forbids the passage and application of laws that "'retroactively alter the definition of crimes or increase the punishment from criminal acts.'" Calif. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (quoting Collins v. Youngblood, 497 U.S. 37 (1990)); see also Weaver v. Graham, 450 U.S. 24, 29 (1981)(ex post facto prohibition applies to events that occurred before the law's enactment).  Using this well-settled Supreme Court precedent, the undersigned will address Petitioner's ex post facto claims, which arise in different contexts.

"Forcible compulsion" issues

In Grounds 8 and 11 of his federal petition, Petitioner contends that the trial court instructed the jury on a definition of forcible compulsion that was not contained in the applicable statute at the time he committed the crimes.  Specifically, Petitioner states that the definition of "forcible compulsion" contained in W. Va. Code § 61-8B-1(1)(c) (1986), which Petitioner asserts was used by the trial court in his instructions to the jury, did not become effective until July 1, 1986, five years after the most recent crimes alleged in the indictment.  (# 2 at 52-53, 58).  Petitioner further states:

> Ex-Post-Facto principles apply to terms and definitions when they change or make harder to defend or work to the detriment of an accused.  This application of a definition, not in place in the code during the time of

the alleged offenses were to have been committed, is
nearly identical to the situation in State v. Hensler,
187 W. Va. 81 (1992) and cannot be applied to the
Petitioner.

(Id. at 53).

In Ground 8 of his federal petition, Petitioner further
asserts that there was insufficient evidence produced at trial to
support a finding by the jury that the alleged victim was subjected
to forcible compulsion.  Petitioner states:

The alleged victim gave no testimony of forcible
compulsion prior to or during any of the alleged
assaults.  The alleged victim gave only testimony that
she was compelled not to tell anyone of the alleged
assaults and that she was compelled to stay in the
environment of which she alleged she was assaulted due to
compelling circumstances allegedly resulting from the
Petitioner in some form or another.  The State was
required to prove prior to or during (all) alleged counts
of (61-8B-4) that there was a (forcible compulsion) that
compelled the alleged victim to consent to the act that
followed.  The alleged victim, the State and apparently
the Court as well as the triers of fact misapplied or
misunderstood the requirement of forcible compulsion as
it relates to the alleged acts that were to have
occurred.

(# 2 at 53).

Respondent's Memorandum of Law argues that the term "forcible
compulsion" was defined in the 1976 version of W. Va. Code § 61-8B-
1, and that it was an essential element of the crime of sexual
assault in the second degree, as addressed in the 1976 version of
W. Va. Code § 61-8B-4.  (# 14 at 21).  Respondent has included in
his exhibits, at Exhibit 15, the applicable 1976 Acts of the
Legislature.  (# 13, Ex. 15).  A review of this exhibit reveals

41

that the term "forcible compulsion" was defined in W. Va. Code §

61-8B-1(1) as:

> (a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or (b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped. For the purposes of this definition, "resistance" includes physical resistance or any clear communication of the victim's lack of consent.

W. Va. Code § 61-8B-1(a),(b) (1976). Furthermore, the 1976 version

of W. Va. Code § 61-8B-4 defined sexual assault in the second

degree as follows:

> (a) A person is guilty of sexual assault in the second degree when: (1) He engages in sexual intercourse with another person by forcible compulsion; or (2) By forcible compulsion, he causes penetration, however slight, of the female sex organ or of the anus of any person, by any inanimate object for the purpose of gratifying the sexual desire of either party.

W. Va. Code § 61-8B-4 (1976).

> Respondent further asserts:

> The only counts in the indictment upon which the court instructed the jury on forcible compulsion were 193 through 240. (Resp't Ex. 14 at 18.) Counts 193 through 240 of the indictment were charges of second degree sexual assault committed between 1979 [and] 1981. The law in effect in West Virginia during the time Petitioner committed counts 193 through 240 included "forcible compulsion" as a requirement for conviction of Second Degree Sexual Assault . . . . The instruction given to the jury on those counts included the exact definition of forcible compulsion included in the statute in effect at the time of the crimes. (Resp't Ex. 14 at 19.) The instructions on the other charges did not include a definition of forcible compulsion.

(# 14 at 21).

42

Concerning Petitioner's claim that the State did not present sufficient evidence of forcible compulsion to justify his conviction on those counts, Respondent's Memorandum of Law states:

> With regard to Petitioner's claim that the victim did not give evidence of forcible compulsion, this is an utter misrepresentation of the record. Besides the fact she had no capacity for consent when the majority of the crimes occurred, the victim specifically testified that Petitioner used physical force, threats and intimidation when she resisted during the almost ten year duration of the attacks. [(See Resp't Ex. 10 at 70.)]

(Id.)

Petitioner's Response reiterates his belief that "[t]he record in the criminal case fails to provide a period correct instruction of Forcible Compulsion, and even a period correct version of Forcible Compulsion, conflicts with the testimony given a[t] trial and is not supported by the evidence adduced there at." (# 17 at 17).

Following the omnibus habeas corpus hearing, the state habeas court found that "the jury instructions dealt with the law at the time of the crime and were proper and were not confusing" and that "[t]he Petitioner's claim regarding Ex Post Facto laws has no merit." (# 13, Ex. 8 at 4 ¶¶ 23, 25).

The undersigned proposes that the presiding District Judge **FIND** that Petitioner was convicted under the statutes applicable at the time each of his crimes were allegedly committed, and that those statutes contained a proper definition of "forcible compulsion. Thus, Petitioner was not convicted by laws that

43

"'retroactively alter[ed] the definition of crimes or increase[d] the punishment from criminal acts.'" Calif. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (quoting Collins v. Youngblood, 497 U.S. 37 (1990)).   Therefore, there was no ex post facto violation.

Furthermore, in reviewing the sufficiency of the evidence to support a State criminal conviction on a due process challenge in a federal habeas proceeding, "the relevant question is whether, after viewing  the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979).  The undersigned proposes that the presiding District Judge **FIND** that the State presented sufficient evidence to support the element of forcible compulsion necessary to convict Petitioner of Counts 193 through 240.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on these claims were neither contrary to, not an unreasonable application of, clearly established federal law, and were not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  The undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on these claims.

44

<u>Repealed statutes issues</u>

In Grounds 10 and 13 of his federal petition, Petitioner contends that he was tried and convicted under a repealed statute in violation of <u>ex</u> <u>post</u> <u>facto</u> principles.  Petitioner contends that, because the statute that was in effect at the time of some of his alleged crimes was repealed at the time of his indictment and trial, it had no force or effect at that time.  Petitioner also claims that his sentences imposed under the repealed statute also violated <u>ex</u> <u>post</u> <u>facto</u> principles.

Specifically, in Ground 10 of his petition, Petitioner states:

The Petitioner was tried in the year 2002 under current West Virginia Law for crimes alleged to have been committed between (1972) and (1981).  The Statute, W. Va. Code [61-2-15] as charged in the first 106 counts of the indictment was repealed in (1976).  The Court applied W. Va. [Code §] [2-2-8], savings clause in an attempt to revive the repealed statute, One provision of [2-2-8], is that in saving a repealed or former law the trial shall conform as practical as possible to the laws in place at the time of the alleged offense(s).  Another provision in continuing a former or repealed law is that, if a prosecution is initiated prior to the repeal but has not reached a final conclusion the power to continue under the repealed statute to a final conclusion is provided by the application of W. Va. [2-2-8].

The application of W. Va. [2-2-8] in the reviving of a repealed statute some 25 to 30 years after the alleged commission of the crime fails the above requirements and fails to meet Constitutional muster, because its application treads on the Protections of the U.S. Constitution and W. Va. Constitution's Ex-Post-Facto Clauses.

The Petitioner was tried under modern (2002), present day Laws and Rules o[f] Evidence, this further violating Ex-Post-Facto Clause of both State and Federal Constitutions, in that no effort was made to lawfully

45

apply W. Va. Code [2-2-8] in an effort to preserve
right[s] and claims that would otherwise be lost. This
application of new Statutes and Rules of Evidence that
became to exist and applied in the Petitioner['s] Case
years after a repealing must be address[ed] through the
application of W. Va. State Code [2-2-8], in order to
take advantage of the new provisions of law Rules or
Code, etc. This taking advantage of such an application
of new law must conform with Notice requirements and
opportunity to be heard. In this case, no Notice
Opportunity, Motion or request pursuant to W. Va. Code
[2-2-8] were ever addressed. The prosecution simply
proceeded under the current (2002) law in place at the
time of prosecution, never considering the law in place
at the time of the alleged offenses or how there [sic;
their] application may disadvantage the Defendant or
corrupt his Constitutional Rights.

West Virginia State Court Rules applied in the
Petitioner[']s prosecution were enacted in (1984), as
amended, were used to govern the Petitioner[']s trail
[sic; trial] this violating Ex-Post-facto Clauses because
these Rules of Evidence were not in effect when the
alleged crimes were to have been committed between (1971)
and (1981). Where some of the above Rule application
would fall into a category more befitting a Bill of
Attainder which is also Prohibited by the W. Va.
Constitution Art. III § 4, The application or change in
the Rules of Evidence directly fall within Category Four
(4) of Justice Chases category description of Ex-Post-
Facto laws, set forth more than 200 years ago in Calder
v. Bull, 3 Dall, 386, 391.

(# 2 at 56-57).

Petitioner repeats this claim in Ground 13, and further
asserts that for W. Va. Code § 2-2-8 to be applicable, a
prosecution must have been initiated prior to the repeal of the
underlying statute. Thus, he asserts it could not be used to
revive a prosecution almost 30 years later. (Id. at 60-61).

Respondent's Memorandum of Law states:

Under West Virginia law, a repealed statute carries

46

the same force and effect after it is repealed and remains applicable to all crimes committed at the time the statute was in effect:

§ 2-2-8.  Effect of repeal or expiration of law.

The repeal of a law, or its expiration by virtue of any provision contained therein, shall not effect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.

In 1976, the State of West Virginia repealed the existing sexual offense statutes and replaced them with what was known as the "Sexual Assault Act," a uniform reworking of the sex crimes in effect at the time.  The West Virginia Savings Statute has been held to apply to all statutes repealed by the West Virginia Sexual Assault Act.  "When the Legislature enacted the Sexual Assault Act it did not include therein a savings clause.  Therefore, W. Va. Code, 2-2-8, the general savings statute, is applicable."  State ex rel. Miller v. Bordenkircher, 272 S.E.2d 676, 677 (W. Va. 1980) citing State ex rel. Arbogast v. Mohn, 260 S.E.2d 820 (W. Va. 1979). [FN 10]

[FN 10 - Under Petitioner's theory, all sexual crimes and rape would have been afforded a de facto, unconditional pardon when the statutes were repealed.  The legislature would certainly not create such a loophole in the law every time it repealed a statute.  This claim is frivolous and unsupported by the law.]

(# 14 at 27-28).

In his Response, Petitioner reiterates that the State failed to provide any notice of the revision of the repealed statute under

W. Va. Code § 2-2-8 prior to his trial.  (# 17 at 19).  Petitioner also makes some nonsensical argument about abatement.  (Id.)

It appears from Petitioner's pleadings that he is attempting to assert a due process claim based upon the State's use of section 2-2-8 to revive the repealed "Rape" statute, W. Va. Code § 61-2-15, in Counts 35 to 106 of Petitioner's indictment.  Petitioner's indictment clearly put him on notice that he was being charged under that statute in those counts.  Petitioner cites no authority for his position that a repealed statute cannot be applied in a prosecution that is initiated after the repeal took place. Furthermore, following Petitioner's conviction, Petitioner was given a choice of being sentenced under the repealed statute or the statutes in place at the time of his sentencing proceeding.  Thus, Petitioner's criminal proceedings conformed to the requirements of W. Va. Code § 2-2-8, and Petitioner cannot demonstrate a due process violation.

The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and that Respondent is entitled to judgment as a matter of law on these claims.

48

Evidence Rules claims

In Grounds 12, 14, and 15 of his federal petition, Petitioner asserts that he was convicted after a trial in which the State introduced evidence under "present day" Rules of Evidence; in particular, evidence of other bad acts was introduced under Rule 404(b), which Petitioner argues, was not enacted at the time that any of his crimes were allegedly committed.   In Ground 12, Petitioner states:

> West Virginia State Court rules of evidence adapted [sic; adopted] on December 18, (1984), to be effective February 1, (1985).  Clearly these rules violated Ex-Post-Facto principles when applied to and [sic; an] offense that is alleged to have occurred in the (1970s). Admissibility of evidence in the Petitioner's case was decided in the Ex-Post-Facto application of these rules primarily rules 401, 402 and 404(b).
>
> Notwithstanding the Ex-Post-Facto application of these Rules were also violated under current law, by allowing the introduction of bad character type evidence against the Petitioner where the Petitioner never placed his good character in play.  In this case the Petitioner never even testified or had any witnesses called in his defense.  Any attack on his character was in violation of the very rules the trial Court used to allow there [sic; their] admissibility.

(# 2 at 59).

In Ground 14, Petitioner repeats his arguments made in Ground 12 and adds that the alleged prior bad acts were too remote in time to be admissible at trial.  (Id. at 61-62).   In Ground 15, Petitioner asserts:

> Between the years of 1970 and 1981, the admissibility of evidence was governed by the common law Rules of Evidence.  The Common Law Rules should have been

used in determining what evidence could lawfully be used
by the Prosecuting Attorney of Fayette County in regard
to the Petitioner's trial.  The problem here is that the
Petitioner was not brought to trial until after (25) to
(30) years had passed form [sic; from] the dates of the
alleged offenses.

* * *

The question at least in part is, were the common law
rules different, did they limit more or provide greater
standard of admissibility, would the common law rules
limit or make the burden on the State greater than the
new rules used at trial.  The Common Law rules of
evidence limited evidence to only legal evidence could be
used by the State.  Evidence of Collateral bad Acts[] was
greatly discouraged, limited and in some instances,
prohibited.  The logic behind this greater limitation was
that a Jury should not be permitted to draw conclusions
form [sic; from] matters not related to the charge
leveled against the defendant.

Under the new rules of evidence, admissibility
standards have been liberalized, permitting nearly any
evidence, even if it has no direct connection to the
alleged offense.  Juries are now permitted to consider
just about any thing and permitted to draw conclusions,
although usually court instructed.

(Id. at 62-64).  In Ground 15, Petitioner further asserts that the

standard for the admission of collateral acts evidence was

liberalized with the enactment of Rule 404(b).  Petitioner contends

that, in State v. Dolin, 347 S.E.2d 208 (W. Va. 1986), the SCAWV

held that collateral crime evidence must be proven by clear and

convincing evidence; whereas, under Rule 404(b), a trial court

judge may admit such evidence if he or she is satisfied, by a

preponderance of the evidence, that the acts or conduct occurred

and that the defendant committed those acts.  State v. Williams,

480 S.E.2d 162 (W. Va. 1996).  (# 2 at 65).  Thus, Petitioner

50

argues that the application of Rule 404(b) worked to his detriment, in violation of the Ex Post Facto Clause.  (Id. at 66).

Finally, in Ground 15, Petitioner asserts that the trial judge violated his constitutional rights because he failed to limit the purpose for which 404(b) type evidence could be considered and "failed to apply the correct standard for admissibility under the law in place at the time of the alleged offenses . . ."  (Id. at 62).  He further states:

> In the case at bar, the trial court failed to give the required focus in its instruction to the jury regarding the 404(b) evidence.  To the contrary, the court once again fell into comfortable generalities by citing perhaps not a litany, by at least several alternative reasons for which the jury might find useful.  Specifically, the court informed the jury that the evidence could be used to establish either:
>
> 1)   a common theme, scheme or plan; or
>
> 2)   a pattern of conduct on the part of the defendant; or
>
> 3)   evidence of the defendant's lustful disposition toward the victim.
>
> The stringent requirement surrounding the introduction of 404(b) evidence results from the recognition that such evidence is highly prejudicial, and the jury must be strictly limited in how it receives and considers that evidence.  Otherwise the obvious result is a conviction based upon the "general propensity" concept.

(Id. at 66-67).

Respondent's Memorandum of Law addresses these claims as follows:

> During the trial in this matter, the victim testified as to years of abuse and attacks committed

against her by Petitioner when they were living in Georgia and Ohio. Because the crimes were outside West Virginia's jurisdiction they were not charged in the indictment. [FN 7 - Facts developed prior to trial resulted in the dismissal of 34 of the counts charged in the indictment and also admitted into evidence under 404(b). This issue is subject of a later claim]. Pursuant to a ruling of the court, the evidence of the uncharged crimes was admitted at trial under Rule 404(b). (Resp't Ex. 11.) When the testimony was offered at trial, the court instructed the jury they were not to consider the evidence for purposes of guilt or innocence but only as proof of common scheme or plan. (Resp't Ex. 10 at 66-67.)

The gravamen of Petitioner's argument seems to be that the challenged evidence acted to reduce the quantum of evidence required for a conviction because it operated to essentially supplement the evidence in a lowered burden of proof for the State. Petitioner further argues that although such evidence was admissible under common law, the courts would have been far less likely to allow it under the law in effect at the time he committed the crimes. Neither is the case under the present set of facts.

(# 14 at 23-24). Respondent emphasizes that the enactment of the West Virginia Rules of Evidence merely codified principles that were already in place under common law. However, Respondent admits that the West Virginia courts were more conservative in their approach to the admission of collateral crimes evidence at the time that Petitioner's crimes were committed. In particular, Respondent notes:

In State v. Dolin, 364 S.E.2d 12 (W. Va. 1986), the court limited the purposes for introducing collateral sex crimes evidence: "[i]t is impermissible for collateral sexual offenses to be admitted into evidence solely to show a defendant's improper or lustful disposition towards his victim." Syl. Pt. 7, Dolin. Under the present day standard collateral sex crimes are indeed admissible for the very purpose prohibited by Dolin:

> Collateral acts or crimes may be introduced in
> cases involving child sexual assault or sexual
> abuse victims to show the perpetrator had a
> lustful disposition towards the victim, a
> lustful disposition towards children
> generally, or a lustful disposition to
> specific other children provided such evidence
> relates to incidents reasonably close in time
> to the incident(s) giving rise to the
> indictment. To the extent that this conflicts
> with our decision in State v. Dolin, 176 W.
> Va. 688, 347 S.E.2d 208 (1986), it is
> overruled.

Syl. Pt. 2, State v. Edward Charles L., 398 S.E.2d 123
(W. Va. 1990).

> The liberalization of the law covering the admission
> of 404(b) over the history of West Virginia
> jurisprudence, however, does not support Petitioner's
> argument. The trial [court] instructed the jury that it
> could only consider the testimony for the purposes of
> establishing a "common theme, scheme or plan" and not as
> evidence of a "lustful disposition" towards children
> exception to the collateral crime bar of [State v.
> McGinnis, 455 S.E.2d 516 (W. Va. 1994).] (Resp't Ex. 10
> at 67.)[2]

(Id. at 24-25).

Respondent further asserts:

> However, even were [t]his Court to find that W.V.R.E.
> 404(b) allowed for the admission of the evidence at trial
> where it wouldn't have been admitted prior to the
> adoption of the rule, this claim still fails. Rule
> 404(b) did not "inform us whether the evidence introduced
> is sufficient to convict as a matter of law . . ." as
> required to implicate ex post facto under Calder's fourth
> category. Carmell, 529 U.S. at 547. The 404(b) evidence
> was introduced for the purpose of showing a "common

---

[2] The undersigned notes that Respondent's characterization of
the trial court's instruction is inaccurate. In fact, the trial
judge did instruct the jury that it could consider the collateral
bad acts as "evidence of a lustful disposition towards children."
(# 13, Ex. 10 at 67; Ex. 14 at 9-10).

> theme, scheme or plan" which is not an element of the statute. Nor did the 404(b) evidence act independently to prove an element of the crime. Moreover, the State's evidence of guilt proved every element of the statute. [FN 8 omitted]. Petitioner has not stated, argued or demonstrated otherwise, nor does the record prove otherwise.

(Id. at 25-26). Concerning Petitioner's argument that, under the Dolin standard, the State would have had to prove the collateral crimes by clear and convincing, rather than a preponderance of the evidence, Respondent asserts that "the standard of proof could have been 'beyond a reasonable doubt' and the evidence would have met the burden for admission under 404(b) - whether the trial was held now or at the time of the crimes. The evidence available to support the collateral crimes was the same evidence presented at trial wherein Petitioner was found guilty beyond a reasonable doubt." (Id. at 27).

Most significantly, Respondent asserts that "The Ex Post Facto Clause 'was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes.'" Trotter v. Sec'y Dept. of Corrections, 535 F.3d 1286 (11th Cir. 2008), cert. denied sub nom, Trotter v. McNeil, 129 S. Ct. 767 (2008). The undersigned finds this argument to be the most persuasive.

These same claims were recently raised by another West Virginia prisoner in a section 2254 petition filed in the United States District Court for the Northern District of West Virginia in

54

Wamsley v. Ballard, 2008 WL 3286390 (Aug. 8, 2008).  In that case,
the petitioner, Wamsley, was tried and convicted of numerous sexual
offenses that had allegedly occurred between thirteen and twenty
years prior to Wamsley's indictment.  The presiding District Judge
made the following rulings on Wamsley's ex post facto claims
concerning the admission of evidence under Rule 404(b):

> To the extent petitioner's claim challenges the
> trial court's interpretation of the West Virginia Rules
> of Evidence, the applicable evidentiary standards for
> 404(b) evidence or the West Virginia Constitution's ban
> on ex-post facto laws, the Court is barred from reviewing
> the claim because "[f]ederal habeas relief does not lie
> for errors of state law."  See Thomas [v. Taylor], 170
> F.3d [466] at 470 [(4th Cir. 1999)].
>
> To the extent petitioner alleges the Rules violate
> ex post facto principles because they were enacted after
> the majority of his crimes were committed, his claim
> fails because "every retrospective law is not an ex post
> facto law."  See Calder v. Bull, 3 U.S. (Dall) 386, 390
> (1978) [sic; 1798][a law is an ex post facto law if it,
> when applied retroactively to an act, 1) criminalizes a
> formally [sic; formerly?] innocent act, 2) aggravates the
> criminal act, 3) increases the punishment for the
> criminal act, or 4) lowers the proof required to convict
> the defendant.]
>
> * * *
>
> As set forth in the fourth prong of Calder's ex post
> facto test, a law is an ex post facto law if it "alters
> the legal rules of evidence and receives less, or
> different, testimony, than the law required at the time
> of the commission of the offense, in order to convict the
> offenders."  Calder, 3 U.S. at 390; see also Carmell v.
> Tex., 529 U.S. 513, 522, 120 S. Ct. 1620, 146 L. Ed.2d
> 577 (2000).  Petitioner urges to [sic; the] Court to find
> that because the West Virginia Rules of Evidence lowered
> the standard for the admissibility of 404(b) evidence
> from "clear and convincing" to "preponderance of
> evidence," it meets Calder's definition of ex post facto.
> The Court declines to so find.  Assuming the Rules of

> Evidence did, in fact, lower the evidentiary standard for admitting 404(b) evidence [FN omitted], the change merely altered the rules for the admission of 404(b) evidence, and did not alter the burden of proof required to convict petitioner.  <u>See</u> <u>United States v. Mest</u>, 789 F.2d 1069, 1071-72 (4th Cir. 1986).  So long as the "crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or degree of proof necessary to establish his guilt, all remain unaffected by the subsequent statute," no ex post facto violation had occurred.  <u>Dobbert v. Florida</u>, 432 U.S. 282, 97 S. Ct. 2290, 53 L. Ed.2d 344 (1977).  Petitioner's claim fails.

2008 WL 3286390 at *24.

For these same reasons, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated an <u>ex</u> <u>post</u> <u>facto</u> violation based upon the admission of evidence under Rule 404(b) and, thus, Petitioner has not demonstrated a violation of his constitutional rights on this basis.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and that Respondent is entitled to judgment as a matter of law on these claims.

<u>Sentencing claims</u>

In Grounds 16, 17 and 18 of his federal petition, Petitioner contends that the fact that he was sentenced under the statutes in effect at the time of his trial, rather than those in effect at the

time the crimes were committed, violated ex post facto principles, because the sentences provided for in the statutes in effect at the time of his trial were more severe.  (# 2 at 67-70).  In Ground 16, Petitioner states:

> This Petitioner was sentenced to a term of 15 to 35 years in prison for crimes alleged to have occurred between 1973 and 1976, under West Virginia Code [ § 61-2-15 ]. The Court sentenced the Petitioner under Statute [ § 61-8b-3 ], the 2002 version.  This violates Ex-Post-Facto law an[d] the 1976 version carried a sentence of 10-20 years not 15-35.

(Id. at 67-68).  In Ground 17, Petitioner states:

> The Petitioner was sentenced to the current penalty under W. Va. Code § 61-8b-3, for alleged violations that were to have occurred between (1976) and (1981), the current 2002 sentences being 15 to 35 years and tee [sic; the] sentence Provided by statute at the time of the alleged offense was 10 to 20 years, this violating W. Va. Constitution Art. III § 4 and U.S. Constitution Art. I § 9, and is and [sic; an] Ex-Post-Facto application of law.

(Id. at 68-69).  In Ground 18, Petitioner states:

> The Petitioner was sentenced to an unconstitutional sentence under West Virginia Code § 61-8b-4 (1976) to a term of five to ten years in prison.  This is a violation of a liberty interest provided by the State and Federal Constitutions, to be considered for early release prior to discharge of the sentence.

(Id. at 69-70).

Respondent's Memorandum of Law addresses this issue as follows:

> Pursuant to the Savings Statute and State ex rel. Miller v. Bordenkircher, 272 S.E.2d 676 (W. Va. 1980), a defendant can choose which version of a statute he wants to be sentenced under when there has been a change in the law. [FN 11 - At one time the sentence for rape carried the possibility of death.]

57

Petitioner leaves out quite a bit of facts in his argument including the fact that W. Va. Code § 61-2-15 (1966) carried a possible life sentence without parole as opposed to the 15 to 35 years under today's statute. (Resp't Ex. 16.)  Rather, Petitioner wrongly states that the Rape statute formerly carried a 20-year sentence when, in fact, it only carried that sentence in the event a jury recommended mercy.  (<u>Id.</u>)  Petitioner could have taken his chances being exposed to a possible life sentence without the possibility of parole on each and every conviction for Rape, but he didn't.  Rather, Petitioner exercised his option under the law to choose which version of the statute he wanted to be sentenced under and he chose the ones that carried the sentences he received.  (Resp't Ex. 17.)

Besides the fact that Petitioner did in fact receive the shorter of the possible sentences[,] even were error shown in the sentencing[,] any such error would be invited.  "[A] party may not complain on appeal of errors that he himself invited or provoked the court to commit." <u>United States v. Wells</u>, 519 U.S. 482, 488 (1997) <u>See</u>, <u>e.g.</u>, <u>Wilson v. Lindler</u>, 8 F.3d 173, 175 (4th Cir. 1993) (en banc) (Even if we were to find such error in the trial of this case in the state court, the error was invited and therefore cannot form the basis for habeas corpus relief.  We also hold that no exception to the invited error doctrine has ever been adopted by this circuit . . . .")

(# 14 at 29-30).

Petitioner's Response states:

The statutory sentence under W. Va. Code § 61-8b-3, (1976), version was in effect up until (1984), and the sentence was 10 to 20 [] years in prison, not 15 to 35, as the petitioner is currently sentence[d] to under this code section.  The Respondent's answer and response should be held in bad faith as it is simply not true that the petitioner is not sentenced in violation of ex post facto, application of law, maintained by the respondent.

(# 17 at 20).

Counts 35 to 106 of Petitioner's indictment charged Petitioner

with "Rape" in violation of W. Va. Code § 61-2-15.  W. Va. Code §

61-2-15 provided for a sentence of life imprisonment, with a possibility for mercy.  If mercy were recommended by a jury, or if the defendant pled guilty, a defendant convicted of a violation of § 61-2-15 would receive a sentence of 10-20 years.  (# 13, Ex. 16 at 1).  In June of 1976, W. Va. Code § 61-2-15 was repealed, and W. Va. Code § 61-8B-1 et seq. was enacted.

Counts 35 through 48 covered the time period of June 1973 to December 1973, when the alleged victim was under age 10.  Because of the alleged victim's age, these counts were the equivalent of "Sexual Assault in the First Degree" under W. Va. Code § 61-8B-3.[3] Petitioner had the choice of being sentenced under § 61-2-15 or § 61-8B-3.  Petitioner elected to be sentenced under the current law for these counts.  (# 13, Ex. 17 at 1).

Counts 49-106 covered the time period of January 1974 to May of 1976.   When § 61-2-15 was repealed, W. Va. Code § 61-8B-5 ("Sexual Assault in the Third Degree"), which was the equivalent statute applicable to these counts, provided for a sentence of 1-5 years in prison.  Again, Petitioner had the choice of being sentenced under § 61-2-15 or § 61-8B-5, and he elected to be sentenced under § 61-8B-5.  (# 13, Ex. 17 at 1).

Counts 107-192 covered the time period of June 1976 to

---

[3]  From 1976 to 1984, § 61-8B-3 carried a penalty of 10 to 20 years in prison.  From 1984 to 1991, § 61-8B-3 carried a penalty of 10-25 years.  On July 1, 1991, the West Virginia Legislature increased the penalty to 15 to 35 years, which is still the current penalty.

December 1979, during which time the alleged victim was between the ages of 12 and 16. These counts charged Petitioner with "Sexual Assault in the Third Degree," in violation of W. Va. Code § 61-8B-5. Although Petitioner had the choice of being sentenced under the statute as it existed at the time period in which the crimes occurred, or the current version, the penalty was the same under both versions. Thus, Petitioner could only be sentenced to 1-5 years on each of those counts. (# 13, Ex. 17 at 1-2).

Counts 193-240 covered the time period of January 1980 to December 1981, when the alleged victim was between the ages of 16 and 18. These counts charged Petitioner with "Sexual Assault in the Second Degree," in violation of W. Va. § 61-8B-4. At the time the crimes were committed, this code section provided for a penalty of 5-10 years in prison. However, at the time of Petitioner's sentencing, that code section had been amended to provide for a penalty of 10-25 years in prison. Thus, when given the choice of which provision he wanted to be sentenced under, Petitioner chose to be sentenced under the old version of the statute, because it had a lower sentence. (# 13, Ex. 17 at 2).

The state habeas court found that "Petitioner was sentenced in accordance with the law in effect at the time of crime and was proper," and that "Petitioner's claim regarding Ex Post Facto laws has no merit." (# 13, Ex. 8 at 4, ¶¶ 25, 27).

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that he was exposed to increased punishment by his choice of sentences that were imposed, and therefore, Petitioner has not demonstrated a violation of his constitutional rights based upon the length of his sentences. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on these claims were neither contrary to, nor an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and that Respondent is entitled to judgment as a matter of law on these claims.

.    **Grounds 20 and 21.**

In Ground 20 of his federal petition, Petitioner contends as follows:

> The First approximately, Thirty Four Counts in the Indictment were found to be false at trial, in that it was found that the alleged victim did not even reside in West Virginia at the time that the alleged offenses were to have been committed, clearly this was relevant impeachment evidence of the alleged victim['] truthfulness, credibility and ability to recall, this Critical defense evidence was completely chilled by the trial Court Judge giving a false and misleading instruction to the Jury that no evidence was presented on the first thirty four counts, and that he dismissed them for that reason, therefore, removing any defense benefit and leaving a trial with unreliable results.

(# 2 at 72-73).  Petitioner adds:

> The remaining allegations were also based on estimates, rather than actual reliable information. This

61

was explained away to the Jury and the burden of proof required to convict lessened by the Court, bay [sic; by] instructing the Jury on four "group[s]" [or] "sets" [of] offenses.  Proffering that if the Jury believed any one event occurred, then they could convict on all counts in that group of offenses.  This is plain error and warrants reversal.

The Defendant had, through cross examination, revealed that the alleged victim had not even been in the State during the time period alleged in the first thirty four counts.  The alleged victim herself provided this information and this was key to the defense.  The cross of the alleged victim provided compelling evidence of the alleged victim[']s willingness to make accusations that were not true or mistaken or a product of a flawed memory.  The importance of such testimony is clear on its face and normally would be of great benefit to a defendant. In this Case, however, the trial court Judge **Chilled** any benefit the Defendant could hope to gain, when he instructed that there was no testimony offered in regard to counts one through thirty four and that he had dismissed them do [sic; due] to that reason. * * * This Petitioner was denied any benefit of its impeachment of the alleged victim, [due] to the Judge's instruction. This leaves a trail [sic; trial] with unreliable results and requires reversal of the conviction.

(Id. at 73-74)[emphasis in original].

In Ground 21 of his federal petition, Petitioner contends:

The Trial Court Judge repeatedly gave an improper instruction to the Jury that, "If you further find by a preponderance of the evidence that **any** element of the crime occurred in Fayette County, West Virginia on or about the date alleged in the indictment, you may find the defendant Orville Cecil Massey, Jr., guilty of the crime".  Clearly the law requires that **all** elements must be proven to have occurred in the County, not just **any** one.  This instruction clearly lessens the burden of proof for the State and is plainly improper and prejudicial to the Defendant, making a trail [sic trial] with unreliable results.

(# 2 at 74-75)[emphasis in original].

Respondent's Memorandum of Law states:

In ground 20, Petitioner argues that the trial court improperly instructed the jury after the State dropped the first 34 counts in the indictment. Petitioner claims the trial court should have instructed the jury that they could consider the dismissal of the first 34 counts to be impeachment evidence that called into question the credibility of the witness.

> Ordinarily, "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues," Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960), and are therefore not reviewable in a federal habeas proceeding. A federal court may grant habeas relief only when the challenged instruction "by itself so infected the entire trial that the resulting conviction violates due process," Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed.2d 368 (1973); it is not enough that the instruction was "undesirable, erroneous, or even 'universally condemned,'" id. at 146, 94 S. Ct. at 399.

Nickerson v. Lee, 971 F.2d 1125, 1138 (4th Cir. 1992).

Claims of error in jury instructions do not raise a federal claim without a showing of resulting unfairness in the trial. In this case, Petitioner complains because the trial court did not offer an utter misrepresentation to the jury as an explanation for why charges in the indictment were dropped. The State dropped the charges because they occurred out of its jurisdiction not because the victim was lying. Any such instruction would have been grounds for a mistrial or an ethics charge against the trial judge. This argument does not support a showing of fundamentally [sic; fundamental] unfairness sufficient to raise a federal issue.

Petitioner also argues that when the court instructed the jury once for multiple counts under each statute (as opposed to a separate instruction on each of the 206 counts that went to the jury) it amounted to "proffering that if the jury believed any one occurred then they could convict on all accounts [sic; counts] in that group of offenses." (Petition at 44.) Petitioner argues that the "grouping" of the instructions reduced the State's burden of proof.

The Supreme Court has never held that a single instruction on multiple counts of the same crime is a violation of due process.  Moreover, the trial court specifically instructed the jury that it was required to consider "each, any or all of the charges as to each of the elements of [the crime]."  (See, e.g., Resp't Ex. 14 at 15-16) Nowhere in the instructions did the court tell the jury that if it found sufficient evidence to convict on one count on any charge, it was sufficient to convict on them all.

In a further challenge to the instructions given at trial, Petitioner claims in ground 21, that when the trial court instructed the jury on the burden of proof for a finding of guilt, the court instructed the jury they were permitted to convict if they found by a preponderance of the evidence that any element of the crimes occurred in Fayette County.

Again, Petitioner presents an argument that is an utter misrepresentation of the instructions, the law and the facts.

After the trial court fully instructed the jury on the burden of proof for establishing guilt, the court instructed the jury that "if . . . each member of the jury is convinced beyond a reasonable doubt of the truth of each, any or all of the charges . . . and if you further find by a preponderance of the evidence that any element of the crime occurred in Fayette County . . . you may [convict] . . . ."  (Id. at 13.)

The portion of the instruction cited by Petitioner is clearly for the purposes of establishing venue.  W. Va. Code § 61-11-12. [FN 12 omitted].  The burden of proof for establishing venue in West Virginia is by a preponderance of the evidence[.]  "[T]he State in a criminal case may prove the venue of the crime by a preponderance of the evidence and is not required to prove the same beyond a reasonable doubt."  State v. Burton, 254 S.E.2d 129, 141 (W. Va. 1979).

A simple reading of the instructions defeats this claim.

(# 14 at 32-34).

Petitioner's Response reiterates the arguments made in his federal petition concerning these claims.  (# 17 at 21-22).

The state habeas court found that the jury instructions were proper under West Virginia law and were not confusing.  (# 13, Ex. 8 at 4, ¶ 23).

The undersigned agrees with Respondent that Petitioner has not stated cognizable constitutional claims concerning the instructions given to the jury at his criminal trial.  As noted by Respondent, "[a] federal court may grant habeas relief only when the challenged instruction 'by itself so infected the entire trial that the resulting conviction violates due process,' Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400, 38 L. Ed.2d 368 (1973)."

The dismissal of the first 34 counts of the indictment occurred because the prosecutor realized that those counts concerned a time period when Petitioner and the alleged victim were living in another state.  Despite the dismissal of those counts, the alleged victim testified about conduct that occurred in that time period and Petitioner's counsel was permitted to cross-examine the alleged victim.  Petitioner's counsel could have questioned the alleged victim about her recollection of the abuse during that specific time period, and attempted to "impeach" her testimony, but elected not to.  Thus, Petitioner's ability to present a defense was not "chilled" by the court's ruling dismissing counts 1 to 34 or the instructions to the jury concerning the same.

The jury was instructed as follows concerning the dismissal of Counts 1 to 34:

> THE COURT:   Ladies and gentlemen of the jury, before counsel makes their closing arguments to you, I want to explain to you just briefly.   You were instructed with regard to Counts 35 through 240.   I want to explain to you what happened to Counts 1 through 34.
>
> The evidence, as it came into this trial with the school records that were offered into evidence without objection, would indicate that the victim came back into Fayette County, West Virginia, in the year '73.  So that would eliminate Counts 1 through 34, as she was not in this state at that time.   So, therefore, I did dismiss those counts, so that's the reason that those 34 counts are not coming before you for your consideration.

(# 13, Ex. 14 at 25).

The undersigned has conducted an exhaustive review of the instructions contained in the trial transcript and has found no instruction that "by itself so infected the entire trial" and rendered it fundamentally unfair.   Thus, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not stated cognizable claims in Grounds 20 and 21 of his federal petition, that the state courts' decisions denying habeas corpus relief on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and were not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and that Respondent is entitled to judgment as a matter of law on these claims.

**G.  Grounds 9 and 22-26 contain claims that are either not cognizable or are now moot.**

In Grounds 9, 22 and 24, Petitioner asserts that he had been denied the right to file a Petition for Appeal in the SCAWV concerning his convictions and sentences, due to ineffective assistance of counsel and inaction on the part of the Fayette County Circuit Court.  In Ground 25, Petitioner further contends that, when he first filed a habeas corpus petition in the Circuit Court of Fayette County, he was denied an omnibus evidentiary hearing, when, instead, the Circuit Court granted relief in the form of vacating and re-entering Petitioner's Judgment Order in his criminal case in order to re-start the time period in which Petitioner could file a timely Petition for Appeal.  (# 2 at 35-37).  In Ground 26, Petitioner asserts that Kevin Burgess and Christopher Frost, the counsel appointed to perfect his habeas appeal, provided ineffective assistance of counsel because they failed to assist him in filing a Petition for Appeal from the denial of his Circuit Court habeas petition.

In Ground 23, Petitioner challenges the SCAWV's discretionary review of criminal convictions, stating:

> The Petitioner is denied of a mandatory review of his Petition for Appeal, in that the West Virginia State Supreme Court of Appeals has consistently held that one convicted of a criminal offence in West Virginia does not have a Constitutional right to a mandatory review of an Appeal Petition only the right to Petition for Appeal this determination being in direct conflict with the Double Jeopardy Clause of both State and Federal Constitution which require that sufficiency-of-evidence

67

be reviewed and a determination made to whether jeopardy has ended or is continuing.

(# 2 at 35-36).

Respondent's Memorandum of Law addresses these claims as follows:

In order to prevail in federal habeas, a Petitioner must demonstrate the violation of a federally guaranteed constitutional right. However, there is no constitutional right to appeal or any other post-conviction collateral proceedings in criminal cases. [FN 14 - Death penalty cases being the exception and in instances where appeal is a matter of right under state law. Neither of which is the case here. Because of the different standards on this claim for death penalty and non-death penalty cases and among states with a first appeal of right, the law is mixed on this issue. But it appears that the federal courts have never granted relief to a state prisoner in West Virginia on this claim.] Because there is no federal right to appellate review for a state prisoner, there can be no claims of ineffective assistance of appellate counsel.

We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their conviction, see Johnson v. Avery, 393 U.S. 483, 488, 89 S. Ct. 747, 750, 21 L. Ed.2d 718 (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. Wainwright v. Torna, 455 U.S. 586, 102 S. Ct. 1300, 71 L. Ed.2d 475 (1982); Ross v. Moffitt, 417 U.S. 600, 94 S. Ct. 2437, 41 L.Ed.2d 341 (1974). We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

Pennsylvania v. Finley, 481 U.S. 55[1], 555 (1987).

68

West Virginia has no appeal of right; only discretionary review, which has been held to be constitutional. "The Fourteenth Amendment does not authorize the federal courts to micro-manage state criminal justice systems . . . . It is enough that they serve the needs of the state which adopted them, and that they afford an ample measure of procedural fairness to criminal defendants seeking an appeal." Billotti v. Legursky, 975 F.2d 113, 115 (4th Cir. 1992). Therefore, Petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586 (1982); Coleman v. Thompson, 501 U.S. 722, 752 (1991).

Any claim of ineffective assistance of counsel in post conviction proceedings fails to raise a federal issue and cannot form the basis for habeas relief.

(# 14 at 39-40).

Petitioner's Response reiterates the arguments he made in his federal petition concerning these grounds for relief. (# 17 at 24).

The state habeas court made the following findings concerning these claims:

15. Trial counsel failed to file a timely appeal, however, the Petitioner was given an option to proceed on his Writ of Habeas Corpus or to be re-sentenced and file a direct appeal to the West Virginia Supreme Court of Appeals.

16. The Petitioner opted for the direct appeal on one was filed within the 120 days of the entry of the Sentencing Order.

17. The Petitioner had filed his pro se appeal and Kevin Burgess and Christopher Frost had been granted permission from the Supreme Court of Appeals to file an Amended Petition for Appeal within the appropriate time frame. The Supreme Court of Appeals denied the appeal.

(# 13, Ex. 8 at 2-3).

69

After the Circuit Court re-entered Petitioner's criminal judgment order, Petitioner filed a Petition for Appeal concerning his conviction and sentences, followed by another habeas corpus petition in the Circuit Court of Fayette County and a Petition for Appeal concerning the denial of the habeas corpus petition. Thus, Petitioner's claims of ineffective assistance of counsel on these issues are now moot. Furthermore, to the extent that Petitioner is claiming ineffective assistance of counsel during his habeas corpus proceedings, such claims are not cognizable in federal habeas corpus.

Furthermore, the Supreme Court has held that appellate review is not an element of due process and, thus, there is no constitutional right to an appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). Therefore, the discretionary refusal of a petition for appeal by the SCAWV does not violate the Constitution of the United States, and Petitioner's claim that he was denied a mandatory appeal is not cognizable in federal habeas corpus.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner's claims in Grounds 9 and 22-26 concerning the his counsels' failure to file petitions for appeal, and Petitioner's claim that he had been denied an opportunity to file an appeal are moot in light of the petitions for appeal that were filed. Furthermore, Petitioner's claims of ineffective assistance of counsel in his habeas proceeding and his claim that he was

denied a mandatory appeal are not cognizable in federal habeas corpus.   The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and were not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and that Respondent is entitled to judgment as a matter of law on all of these claims.

### H.   Grounds 9 and 27 - Other ineffective assistance of counsel claims.

In Grounds 9 and 27 of his federal petition, Petitioner asserts that his trial counsel provided ineffective assistance of counsel during his pre-trial and trial proceedings.  In Ground 9, Petitioner contends that his trial counsel "failed to investigate the applicable law in place at the time of the alleged offenses, failed to investigate the case, find favorable witnesses, file Motions to Quash the Indictment that was plagued with fatal flaws of Ex-Post-Facto applications of law and properly prepare a defense or move for judgment of acquittal . . . ."  (# 2 at 31-32).   In Ground 27, Petitioner contends that his trial counsel "failed to investigate the case, attempt to find favorable witnesses, put on any defense after the State's case in chief, or to allow the Defendant to testify in his own behalf."  (# 2 at 37).   In support of these claims, Petitioner adds:

71

The Petitioner requested of trial counsel, James B. Rees, to interview and subpoena trial witnesses: Billie Jo Massey, petitioner's wife; Valisha Massey, daughter, Tanunya Rhodes, daughter; Patrick Massey, son; Larry Paul Massey, brother; Marlene Keys, sister; Merrell King, sister; Sandra Jackson, friend of the Family; Carol Belton, sister. It is the Petitioner's belief that the testimony of the above witnesses would be approximately the following: The alleged victim and her mother, both witnesses against him at trial, continued to have contact with the Petitioner's family members named above and attended Massey Family reunions and there was never any mention of any indecent actions on the part of the Petitioner. This is exactly what each of the above people testified to at the Habeas hearing and is part of the record herein.

(# 2 at 78).

In <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." <u>Holman v. Gilmore</u>, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing a trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, <u>id.</u> at 689, and the burden is on the Petitioner to show prejudice. <u>Hutchins v. Garrison</u>, 724

F.2d 1425 (4th Cir. 1983).   Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690. A petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. See Strickland, 466 U.S. at 693.

Citing to Strickland, Respondent's Memorandum of Law addresses this claim as follows:

It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.   However, defendants are not entitled to unlimited, fruitless investigation or to put irrelevant witnesses on the stand.   "An attorney need not fully investigate every potential avenue if he or she has reasonable grounds for not doing so." Berryman v. Morton, 100 F.3d 1089, 1101 (3d Cir. 1996).

In order to prevail on this claim, Petitioner would have to demonstrate that the witnesses could have offered potentially exculpatory or favorable evidence. Petitioner would then have to demonstrate that if the witnesses had been called, the outcome of the trial may have been different when considered in light of the evidence of guilt presented at trial.   "[A]n ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695.

Petitioner claims that his second wife and daughter would have testified that the victim and her mother never told them about the abuse even though the victim and her mother regularly attended family reunions.

This claim is not only insufficient to support a

> finding of ineffectiveness, it is preposterous. The
> testimony of Petitioner's family members that the victims
> never told them about the abuse at their annual family
> reunion, would prove only that the victims didn't tell
> other family members about the abuse. That is all. Any
> such testimony is not exculpatory, favorable nor could it
> overcome the evidence presented at trial sufficient to
> call into question the reliability of the results. There
> is not testimony offered at the habeas hearing from the
> so-called potential witnesses that could have overcome
> the insurmountable evidence of guilt presented at trial.
> (Resp't Ex. 19.)

(# 14 at 38-39).

Petitioner's Response reiterates his arguments made in his

federal petition.  (# 17 at 25).

The state habeas court made the following findings concerning

these claims:

> 3.   The Petitioner was on bond living in Webster
>      County, West Virginia, and claims that he wanted
>      his three children, his ex-wife and his brothers
>      and sisters to testify at his trial.
>
> 4.   The Petitioner claims that J.B. Rees, his attorney,
>      told him that these people would be of no help and
>      would only be witnesses regarding his character.
>
> 5.   The witnesses would have testified that they saw
>      the Petitioner talking with the mother of the
>      victim at family gatherings and she did not appear
>      to be afraid of him.
>
> 6.   Petitioner never checked with any of the family
>      members he wanted as witnesses to see if Mr. Rees
>      had talked to them, even though some of the
>      witnesses lived with him.
>
> 7.   Two of his daughters, age 14 and 16 at the time of
>      the trial were not called to testify and only one
>      of them attended the trial, but both lived with him
>      in Webster County.
>
> 8.   J.B. Rees filed and had hearings on pre-[trial]

motions regarding the pre-indictment delay,
suppression hearings on a telephone recording
between the Petitioner and the victim of the crimes
and a suppression hearing on the statement of the
Petitioner, all of which motions to dismiss and
suppress were denied by the Court at the conclusion
of the hearings.

9.   A 404(b) motion was heard by the Court and the
testimony was permitted over the objection of the
Petitioner.

* * *

13.  Petitioner never told his attorney that he had
sexual performance problems.

14.  Trial counsel objected to statements of the
Prosecutor during opening and closing statements.

* * *

18.  Had all of the witnesses that Petitioner desired to
be called at the trial testified, there would have
been no difference in the verdict by the jury.
Those witnesses had no exculpatory information.

19.  One potential witness offered a defense to Mr. Rees
that was so outlandish that Mr. Rees appropriately
declined to advance the theory.

20.  There was no ineffective assistance of counsel as
to J.B. Rees nor was there ineffective assistance
of counsel as to Kevin Burgess and Christopher
Frost.

* * *

The Court concludes that all of the issues raised in the
Omnibus Habeas Corpus Proceeding are without legal merit.

(# 13, Ex. 8 at 2-4).

Upon an exhaustive examination of the trial transcripts, it is

apparent that Petitioner's trial counsel had a sufficient

75

understanding of the law applicable to Petitioner's charges, that he made appropriate pre-trial motions and objections during trial, that he adequately cross-examined the State's witnesses in the face of Petitioner's admissions, that he moved for judgment of acquittal at the appropriate time, and that he aggressively challenged the State's evidence in closing arguments.   Furthermore, it was reasonable for Mr. Rees to advise Petitioner not to testify in the face of his prior admissions.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has failed to demonstrate that his counsel's conduct fell below an objective standard of reasonableness.   The undersigned further proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different, but for his counsel's performance.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state habeas courts' decisions denying Petitioner habeas corpus relief on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Grounds 9 and 27 of Petitioner's section 2254 petition.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (# 9), **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (# 2), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the district court and a waiver of appellate review by the circuit court of appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th

Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

<u>     June 5, 2009     </u>
          Date

Mary E. Stanley
United States Magistrate Judge

78